**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EDWARD SKARDA,            )
                                )
        Plaintiff,        )
                                )     No. 21 C 0004
     v.                   )
                                )     Judge Robert W. Gettleman
HOSPITALITY LOGISTICS     )
INTERNATIONAL, LLC, d/b/a HLI   )
GOVERNMENT SERVICES,     )
                                )
        Defendants.    )

## MEMORANDUM OPINION & ORDER

Plaintiff Edward Skarda brings a three-count complaint against defendant Hospitality

Logistics International, LLC, d/b/a HLI Government Services ("HLI"), alleging violations of the

Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 et seq., retaliatory

discharge in violation of the IWPCA, 820 ILCS 115/114(c), and fraudulent inducement in

connection with plaintiff's employment and termination from HLI. Defendant has moved to

dismiss. (Doc. 8). For the reasons stated below, defendant's motion is granted in part and

denied in part.

## BACKGROUND

Plaintiff is an Illinois resident. Defendant is an LLC organized under the laws of North

Carolina, with members in Florida, North Carolina, and Arkansas.[1] (Doc. 15; Doc. 16).

Defendant is a freight forwarding logistics company for the hospitality industry, primarily

servicing hotels and military bases. After a lengthy recruiting process, defendant hired plaintiff

---

[1] Given the diversity of the parties, and plaintiff's claim for damages in excess of $75,000, the court has diversity
jurisdiction over the instant suit. 28 U.S.C. § 1332(a)(1); Hicklin, L.C. v. Bartell, 439 F.3d 346 (7th Cir. 2006).

as Director of Procurement.  Plaintiff started working for defendant on June 1, 2018.  Prior to

plaintiff's employment with defendant, plaintiff worked for one of defendant's competitors,

XPO.  Throughout the recruitment and negotiation process, plaintiff repeatedly stated that he

would accept an offer with defendant only if defendant paid more than XPO; that is, more than

$200,000 a year.

Eventually, the parties came to an agreement.  The agreement provided that plaintiff

would be an at-will employee.  Plaintiff alleges that the agreement required defendant to pay

plaintiff $207,995 for the first year of employment, which included base salary and commissions.

Defendant disputes plaintiff's allegations and attaches the agreement and emails between the

parties, both of which plaintiff references in his complaint.[2]  According to defendant, defendant

was required to pay plaintiff a base salary of $150,000, starting June 1, 2018, with commissions

to be earned after January 1, 2019.  For the year of 2019, if plaintiff met his commission targets,

plaintiff would have earned $210,913—over the $200,000 threshold plaintiff requested.  Plaintiff

never earned commissions because he was terminated on January 2, 2019.

Plaintiff's complaint refers to an email exchange between plaintiff and defendant's vice

president, Rich Jabara, in early May 2018.  Plaintiff alleges: "May 1, 2018, Jabara sent an email

to tell plaintiff, '[Skarda], please see revised offer. We are very excited to get started.'"

Defendant attaches the rest of the email exchange to its motion to dismiss.  In the same

exchange, plaintiff states: "Rich, just to be clear, the commission pool calculator you attached is

strictly for back reference on commission and share percentages & bonuses paid once targets

---

[2] "It is well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."  Mueller v. Apple Leisure Corp., 880 F.3d 890, 895 (7th Cir. 2018); see also Fryman v. Atlas Financial Holdings, Inc., 462 F.Supp.3d 888, 894 (N.D. Ill. May 26, 2020) ("when a document is referenced in the complaint and central to plaintiff's claims, the Court may consider it in ruling on a motion to dismiss").

hit?" Jabara responds: "it is to calculate commissions starting January 1, 2019 and bonus at target levels. Let me know if there is confusion. As we should be 100% clear and transparent." Plaintiff responded "I'm clear" and proceeded to sign his offer letter.

Plaintiff alleges that defendant failed to pay him over $200,000, as promised. On December 13, 2018, plaintiff formally submitted a complaint to Jabara regarding his compensation. Again, on December 17, 2018, plaintiff formally submitted a complaint to Jabara and noted that he had not yet received a response to his earlier complaint. Jabara allegedly never responded to either complaint, so plaintiff submitted a complaint to defendant's human resources department and comptroller on December 28, 2018. Plaintiff alleges that on December 28, 2018, defendant's president called plaintiff to berate him about his complaints and accused plaintiff of making false accusations to human resources regarding his salary and payment. During that phone call, the president told plaintiff not to return to work. On January 2, 2019, Jabara terminated plaintiff.

## DISCUSSION

A Rule 12(b)(6) motion to dismiss challenges the "sufficiency of the complaint." Berger v. Nat. Collegiate Athletic Assoc., 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Aschroft v. Iqbal, 566 U.S. 662 (2009) quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Defendant moves to dismiss all three counts in the complaint. The court will discuss each in turn.

## I.     IWPCA Claim (Count I)

Defendant first argues that plaintiff's IWPCA claim should be dismissed because he fails to plead what remuneration he was not paid by defendant, and because plaintiff was paid pursuant to his offer letter.

"The IWPCA provides employees with a claim against employers for the timely and complete payment of earned wages. The Act defines 'wages' narrowly—a wage is 'compensation owed to an employee by an employer pursuant to an employment agreement between the parties." Enger v. Chi. Carriage Cab Corp., 812 F.3d 565, 567 (7th Cir. 2016) (quoting 820 ILCS 115/2). The IWPCA "does not grant any independent right to payment of wages and benefits; instead it only enforces the terms of an existing contract or agreement." Hughes v. Scarlett's G.P., Inc., 2016 WL 454348, at *7 (N.D. Ill. Feb. 5, 2016) (citing Enger, 812 F.3d at 567).

Here, plaintiff identifies an employment agreement between himself and defendant. Defendant argues that plaintiff fails to allege what precisely he was owed. Indeed, plaintiff merely states, in general terms, that defendant failed to pay over $200,000 as promised.

Defendant's more compelling argument is that the employment agreement demonstrates as a matter of law that plaintiff was not entitled to make over $200,000 until January 2019. The plain language of the employment agreement states that plaintiff would be paid only the base salary of $150,000 until January 2019, at which point plaintiff could start earning commissions. In addition to the agreement, the parties confirmed this arrangement over email. The only argument plaintiff makes in response is that the court should not consider any materials extraneous to the complaint, and that the court should take plaintiff's allegations as true. However, under Seventh Circuit precedent, a court is permitted to consider documents

extraneous to a complaint when the plaintiff explicitly references them, which is the case here. See Mueller v. Apple Leisure Corp., 880 F.3d 890, 895 (7th Cir. 2018). Plaintiff has otherwise provided no responsive arguments.

Under the unambiguous terms of the agreement, plaintiff was not entitled to make over $200,000 until January 1, 2019. Thus, his allegations—that defendant failed to pay him over $200,000 as promised—are contradicted by his own employment agreement. Plaintiff's IWPCA claim fails and must be dismissed.

## II.    IWPCA Retaliation (Count II)

In 2011, the Illinois legislature amended the IWPCA to include a cause of action for retaliation. Section 14(c) of the IWPCA now provides that "[a]n employee who has been unlawfully retaliated against shall be entitled to recover…in a civil action…all legal and equitable relief as may be appropriate." 820 ILCS 115/14(c). Unlawful retaliation under the IWPCA occurs when an employer discharges or otherwise discriminates against an employee for complaining "that he or she has not been paid in accordance with the provisions of this Act." Id.

Defendant argues that plaintiff's retaliation claim should be dismissed because a violation of the IWPCA does not violate public policy. However, defendants mistakenly cite to the standard for the common law tort of retaliatory discharge, which requires a violation of public policy.[3] Plaintiff invokes the statutory retaliation claim found in Section 14(c) of the IWPCA, and such a claim does not require that the retaliation violate public policy. It requires only that a plaintiff complain that he or she has not been paid according to the Act, and that the employer discharges or otherwise discriminates against the plaintiff. See Hughes v. Scarlett's G.P. Inc., 2016 WL 454348, at *8 (N.D. Ill. Feb. 5, 2016). Plaintiff has alleged that he made complaints to

---

[3] Defendant also cites to cases decided well before the statute was amended.

both Jabara and defendant's human resources department, that he received a threatening and berating phone call from defendant's president regarding plaintiff's complaint to human resources, and that defendant terminated plaintiff several days later. Consequently, plaintiff has sufficiently alleged an IWPCA retaliation claim.

### III. Fraudulent Inducement (Count III)

To plead a fraudulent inducement claim under Illinois law, a plaintiff must allege: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. Integrated Genomics, Inc. v. Gerngross, 636 F.3df 853, 863 (7th Cir. 2011). A false statement may include a half-truth which, although technically accurate, is misleading because it omits important qualifying information that, had it been known, would have caused the plaintiff to act differently. Id.

Plaintiff's brief states that defendant misrepresented plaintiff's salary; specifically, that plaintiff would be paid more than $200,000. Plaintiff further argues that defendant knew that statement was false and knew that they would pay plaintiff less than promised. Plaintiff's brief is quite cursory on this point, and does not point the court to specific paragraphs or allegations in the complaint. In fact, on the court's own reading of the complaint, it is clear that plaintiff has failed to sufficiently plead all of the elements of a fraudulent inducement claim.

Central to sustaining a fraudulent inducement claim is a false statement of material fact. There is no such false statement here, as evidenced by the employment agreement and emails between the parties. Defendant was clear and upfront about the salary scale, and clarified that plaintiff understood the commission terms. Indeed, plaintiff confirmed that he understood the salary scale and that he would not earn commissions until January 2019. Plaintiff has thus failed

to allege any false statement of material fact or that defendant knew the statement was false. Consequently, this claim is accordingly dismissed.

## **<u>CONCLUSION</u>**

For the reasons stated above, defendant's motion to dismiss (Doc. 8) is granted in part and denied in part. Counts I and III are dismissed. Defendant is directed to answer Count II on or before July 14, 2021. The parties are directed to submit a joint status report using this court's form on or before July 21, 2021.

ENTER:

**Robert W. Gettleman**
**United States District Judge**

**DATE:  June 23, 2021**